Filed 2/25/16  Stump v.  Sierra Club CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JOHN STUMP,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SIERRA CLUB,<br><br>Defendant and Respondent. | D066956<br><br><br><br>(Super. Ct. No. 37-2013-00056415-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Robert P. Ottilie for Plaintiff and Appellant.

Donahue Fitzgerlad and Michael S. Ward for Defendant and Respondent.

John Stump brought a petition for writ of mandate and complaint for declaratory and injunctive relief against the Sierra Club, a nonprofit public benefit corporation. Stump, a member of the Sierra Club, alleged that it improperly removed him from various leadership positions.  The trial court denied Stump any relief.  Stump appeals, contending the Sierra Club's decision to remove him from all leadership positions

violated the organization's bylaws and rules and was not supported by substantial evidence. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Stump joined the Sierra Club in 2008 and has remained an active dues-paying member since that time. He served in various volunteer leadership positions within the organization. For example, Stump was a member of the Executive Committee of the San Diego Chapter of the Sierra Club. In 2012, he was selected to chair the Executive Committee. Stump's term on the Executive Committee expired in December 2013.

In August 2012, Susan De La Rosa, the Sierra Club's director of human resources, informed Stump that the Sierra Club had suspended him from all volunteer leadership positions. The Sierra Club's president, executive director, and chair of the Volunteer Leadership Advisory Committee (the Panel) made the suspension decision. The suspension notice explained the grounds for suspension, including that Stump threatened Richard Miller's continued employment with the Sierra Club, engaged in harassment in violation of employment policies, caused others to become fearful and reluctant to participate in activities, and misdirected the organization's funds. Miller was the San Diego Chapter's only paid employee. The Sierra Club later clarified that the suspension only impacted Stump's "privilege to volunteer in an elected or appointed Sierra Club leadership role," and not his membership in the organization. The Sierra Club did not prohibit Stump from running in the upcoming San Diego Chapter Executive Committee election.

2

The suspension notice informed Stump that he could respond to the notice in writing before the Panel made its final decision regarding the suspension. Stump requested that the Sierra Club provide him with documentation supporting its allegations and information regarding persons who complained about him. The Sierra Club declined to provide Stump with that information. In October 2012, Stump prepared a lengthy response to the Panel's suspension notice disputing each of its allegations. Around the same time, Stump ran for reelection to the Executive Committee, but was not reelected.

After receiving Stump's response, the Sierra Club retained John Baum, an employment attorney, to investigate the matter. Baum interviewed multiple witnesses, including Stump. The Panel considered Stump's response to the suspension notice and Baum's investigation.

In February 2013, the Panel notified Stump that it was permanently suspending his privilege to serve in volunteer leadership roles, effective March 2013. The Panel stated the reasons for its decision, including: (1) although Stump did not directly threaten Miller's employment, Stump's interactions with Miller created a perception that Miller's job was threatened; (2) while Stump was chair of the Executive Committee, the San Diego Chapter paid multiple individuals for work without complying with the Sierra Club's independent contractor and employment policies; (3) Stump's approach to leadership contributed to ongoing factionalism in the chapter; and (4) Stump actively worked to damage Miller's reputation by digging up irrelevant personal information from the past and forwarding the information to others. The Panel informed Stump that he

3

could appeal its decision to the Sierra Club's Volunteer Leadership Advisory Committee (the Committee).

Stump appealed to the Committee, which included Susana Reyes, who was also on the Panel that had made the decision to suspend Stump. The Sierra Club informed Stump that while Reyes would discuss Stump's appeal with other Committee members, she would not vote on whether to reverse the Panel's permanent suspension decision. Along with his appeal, Stump submitted documentation and declarations disputing the Panel's conclusions. The Committee reviewed Stump's materials, discussed his appeal and voted to confirm his permanent suspension from holding volunteer leadership positions in the Sierra Club. In May 2013, the Committee informed Stump that it denied his appeal.

In June 2013, Stump brought a petition for writ of mandate and complaint for declaratory and injunctive relief against the Sierra Club. Stump sought declarations that the Sierra Club deprived him of his full membership rights, he should be entitled to seek and hold leadership positions, the record does not support the Sierra Club's actions, and the Sierra Club violated Stump's rights under the organization's bylaws and rules. Stump also sought a writ of mandate preventing the Sierra Club from enforcing the suspension against him and compelling the Sierra Club to provide him with all rights due him as a member. Lastly, Stump sought to enjoin the Sierra Club from enforcing the suspension and preventing him from seeking and holding leadership positions.

The trial court denied Stump's requested relief. The court noted that Stump was not seeking a determination of whether the Sierra Club violated the Corporations Code or the common law doctrine of fair procedure; rather, Stump requested that the court

4

determine whether the Sierra Club followed its own rules. Further, Stump was not seeking to be reinstated to a volunteer leadership position, but was instead requesting a determination of his *future* right to run for a leadership position. The court found: (1) declaratory relief was not appropriate because no justiciable present controversy existed between Stump and the Sierra Club as Stump only sought an opportunity to run for a leadership position in the future, (2) mandamus was not appropriate because Stump only sought a future opportunity to hold office, (3) the Sierra Club satisfied the procedural requirements of the Corporations Code and common law doctrine of fair procedure, (4) holding an appointed committee position in the Sierra Club was not a fundamental right of membership and thus not subject to the court's review, (5) the question of whether Stump could hold a leadership position in the future was not ripe, and (6) the question of whether the Sierra Club complied with its own procedures was an "internal question best left to the Sierra Club."

Stump moved for a new trial based on irregularities in the proceedings, new evidence, insufficiency of the evidence, and error in law. Stump affirmed his desire to hold a leadership position within the Sierra Club and stated that but for his suspension, he would run for election to the Executive Committee at the earliest possible opportunity. The trial court denied Stump's new trial motion.

## DISCUSSION

### I. *The Nature of Stump's Claims*

Code of Civil Procedure section 1085, subdivision (a), grants the court the power to issue a writ of mandate to compel "the admission of a party to the use and enjoyment

5

of a *right or office to which the party is entitled*, and from which the party is unlawfully precluded by the inferior tribunal, corporation, board, or person." (Italics added; undesignated statutory references are to the Code of Civil Procedure.) Section 1060 allows any person interested under a written instrument to bring an action to declare his or her rights thereunder.

The parties dispute whether Stump's ability to seek and hold volunteer leadership positions constituted a *right* subject to a writ of mandate or whether it was merely a *privilege* that could be taken away by the Sierra Club. Similarly, they dispute whether Stump had a contractual right under the Sierra Club's bylaws and rules to hold leadership positions. Stump claims the Sierra Club's bylaws constituted a written agreement between the parties which conferred upon him the right to hold leadership positions as he was an active dues-paying member. The Sierra Club, on the other hand, points to the language of its rules, which state that serving in a volunteer leadership position is a privilege which can be removed. Assuming without deciding that Stump's claims are proper under sections 1060 and 1085, we must ascertain their precise nature as the parties are at odds in that regard as well.

At first glance, Stump appears to raise arguments akin to those of the common law right to fair procedure, which prevents private organizations from expelling a member in a manner that is procedurally unfair. (*Ezekial v. Winkley* (1977) 20 Cal.3d 267, 272-273; *Kurz v. Federation of Pétanque U.S.A.* (2006) 146 Cal.App.4th 136, 147 (*Kurz*).) The court in *Kurz* discussed the application of the doctrine to a nonprofit sports organization that suspended two of its volunteer umpires. (*Kurz, supra*, 146 Cal.App.4th at p. 138.)

6

The two umpires challenged the organization's decision to suspend them because the organization allegedly, among other things, failed to provide a written copy of the complaint, pursued charges not set forth in the complaint, failed to follow the disciplinary procedures in its bylaws, failed to respond to requests for clarification of the charges, failed to provide a formal hearing, failed to provide a record of the proceedings, failed to exclude certain biased persons from the proceedings, and pursued charges motivated by the malice of others. (*Id.* at p. 142.) The suspended umpires asserted that the common law right to fair procedure applied to them. (*Id.* at p. 147.) The court rejected the umpires' argument, concluding that the doctrine did not "encompass internal decisions that are unrelated to exclusion or expulsion from membership or that do not adversely impair a member's economic interest. Moreover, common sense and judicial restraint would also dictate that a court should not involve itself in internal disciplinary actions of the type involved in this case. Such determinations are better left to the discretion and expertise of the nonprofit . . . organization's governing board." (*Id.* at p. 149, fns. omitted.)

Stump's claims are similar to those of the suspended umpires in *Kurz*, yet Stump expressly disclaimed any arguments based on alleged violations of the common law right to fair procedure and Corporations Code, which were also raised and rejected in *Kurz*. (*Kurz*, *supra*, 146 Cal.App.4th at pp. 146-147 [concluding the proceedings against the suspended umpires were fair and reasonable and did not violate the Corporations Code].) In fact, when the trial court raised those issues in this case, Stump clarified that he did not assert claims for violations of Corporations Code section 5341, regarding termination of

7

membership in a nonprofit public benefit corporation, and the common law right to fair procedure. Rather, Stump stated that he based his claims on the Sierra Club's alleged noncompliance with its own bylaws and rules.

On appeal, Stump reiterates that he is not asserting a common law claim of fair procedure. He does, however, raise arguments on appeal based on alleged violations of the Corporations Code. Those arguments are forfeited because Stump disclaimed them in the trial court. (*GECCMC 2005-C1 Plummer Street Office Ltd. Partnership v. NRFC NNN Holdings, LLC* (2012) 204 Cal.App.4th 998, 1003, fn. 3 [arguments disclaimed in the trial court are forfeited on appeal].)

## II. *Sierra Club's Bylaws and Rules*

Stump argues the Sierra Club failed to comply with its own bylaws and rules when it suspended his ability to volunteer in leadership positions. Specifically, he asserts the Sierra Club violated its bylaws and rules by failing to resolve the matter informally and at the local level, refusing to provide him with the evidence supporting its decision, and failing to provide a fair appeal because Reyes was on the Panel that initially suspended him and the Committee that considered his appeal. We reject these arguments.

A. Applicable Bylaws and Rules

The Sierra Club was governed by Bylaws and Standing Rules, which related to the bylaws. The Standing Rules provided that "[t]he only membership rights of Club members are the rights specifically provided by the Articles, Bylaws and the Corporation Law."

8

Standing Rule 2.2.6 set forth standards of conduct for members. That rule also provided that "[s]erving in an appointed to elected position of leadership is a privilege that can be lost either by ignoring the duty of loyalty expected of all Club leaders or by violating the . . . affirmative standards of conduct." In regard to violations of the standards of conduct, Standing Rule 2.2.6(c) provided that the "chair of the relevant Club entity" should quickly resolve violations and any disputes "should be resolved at the most local level, and informally whenever possible." Further, "[f]ormal actions under Standing Rule 5.10.2 can be taken to remove, suspend or bar members from leadership positions."

Standing Rule 5.10.2 pertained to the termination of membership or suspension of member privileges. That rule provided:

> "(a) The Board has an obligation to protect the Club from harm, ensure a safe and productive working environment for members and staff, and foster a Club in which people want to participate in its mission. To assist in fulfilling this obligation, the Board delegates the authority for termination of Club membership or suspension of member privileges, including the privilege of serving in elected or appointed Club leadership positions, to the Executive Director, Club President, and chair of the Board Volunteer Leadership Advisory Committee. . . .

> "[¶] . . . [¶]

> "(d)(i)  If the Executive Director, President and Board Volunteer Leadership Advisory Committee chair determine the request may warrant action, they will inform the member and those who have requested the investigation of that determination. . . .

> "(ii)  If they agree to take action, they will notify the member in writing of this decision, the reasons for it, and the effective date of the action. . . .  This notice shall inform the member that the termination of membership or suspension of member privileges may be appealed in writing to the Volunteer Leadership Advisory Committee. . . .

9

"(e)  The Volunteer Leadership Advisory Committee shall review all timely appeals from members and decide whether to overturn the Panel's decision or let it stand."

B.  Analysis

"The rights and duties of members of a private voluntary association, between themselves and in their relation to the association, are measured by the terms of the association's constitution and bylaws.  [Citation.]  However, in many disputes in which a party's rights and duties in relation to an organization are at issue, the courts may decline to exercise jurisdiction."  (*Berke v. Tri Realtors* (1989) 208 Cal.App.3d 463, 466-467.)  "One concern in such cases is that judicial attempts to construe ritual or obscure rules and laws of private organizations may lead the courts into what Professor Chafee called the 'dismal swamp.'  [Citation.]  Another is with preserving the autonomy of such organizations."  (*California Dental Assn. v. American Dental Assn.* (1979) 23 Cal.3d 346, 353.)  However, courts will intervene "when the aggrieved party can demonstrate ' "an abuse of discretion, and a clear, unreasonable and arbitrary invasion of [its] rights. . . ." ' " (*Id.* at p. 354.)

" '[W]hen a private voluntary organization plainly contravenes the terms of its bylaws, the issues of whether and to what extent judicial relief will be available depend on balancing (1) the interest in protecting the aggrieved party's rights against (2) the infringement on the organization's autonomy and the burdens on the courts that will result from judicial attempts to settle such internal disputes.' " (*California Trial Lawyers Assn. v. Superior Court* (1986) 187 Cal.App.3d 575, 579.)  However, "the initial question in determining whether judicial action is appropriate is whether the challenged action

10

'plainly contravenes' the association's bylaws. Only then does the balancing test noted above come into play." (*Id*. at p. 580.)

In light of the foregoing principles, the initial question before us is whether Stump has shown that the Sierra Club's actions "plainly contravene" the organization's bylaws. (*California Trial Lawyers Assn. v. Superior Court*, *supra*, 187 Cal.App.3d at p. 579.) We conclude he has not made this required showing. We address each of Stump's challenges to the Sierra Club's Bylaws and Standing Rules in turn.

First, Stump asserts the Sierra Club violated its procedures in Standing Rule 2.2.6(c)(i) by failing to resolve the matter informally and at the local level. However, that rule provides that the "chair of the relevant Club entity" should resolve disputes informally at the local level "whenever possible." Here, Stump was the San Diego Chapter's chair. He was initially suspended because the Sierra Club's director of human resources had received complaints that Stump had threatened and harassed Miller, an employee. Accordingly, resolution at the local level was not possible in this case. Moreover, Standing Rule 2.2.6 also provides that formal action under Standing Rule 5.10.2 "can be taken to remove, suspend or bar members from leadership positions." This is the process that took place in this case. Accordingly, Stump has not shown that the Sierra's Club's action "plainly contravened" Standing Rule 2.2.6.

Stump next argues the Sierra Club violated Standing Rule 5.10.2(d) by refusing to provide him with the evidence supporting its decision. Stump points to the language of the rule, which provides that if the Panel decides to take disciplinary action against a member, it shall notify the member in writing of its decision and "the reasons for it." The

11

Panel provided Stump with a notice explaining the "reasons" for suspending him, including that Stump threatened Miller's continued employment with the Sierra Club, engaged in harassment in violation of employment policies, caused others to become fearful and reluctant to participate in activities, and misdirected the organization's funds. Nothing in the rule states that the Panel was required to provide Stump with the evidence supporting its reasons for suspension. Rather, the rule merely states that the Panel must provide its "reasons," which it did in this case. Thus, Stump has not shown the Panel contravened the rule.

Lastly, Stump contends the Sierra Club violated Standing Rule 5.10.2 by failing to provide him a fair appeal because Reyes was on the Panel that initially suspended him and the Committee that considered his appeal. Stump's argument fails because Standing Rule 5.10.2(d)(i) provided that the initial Panel reviewing a request for suspension was comprised of the executive director, president, and chair of the Committee. Subsection (e) of that rule provided that Stump could appeal the Panel's decision to the Committee. As its chair, Reyes was part of the Committee. Thus, Standing Rule 5.10.2 expressly allowed Reyes to serve on both the Panel and Committee. Nothing in the rule suggests that Reyes was required to recuse herself from the process. In any event, after Stump expressed concern about Reyes acting on both the Panel and the Committee, the Sierra Club informed him that while Reyes would discuss Stump's appeal with other Committee members, she would not vote on whether to reverse the Panel's permanent suspension decision. Thus, Stump has not shown that Reyes's role on the Panel and the Committee plainly contravened Standing Rule 5.10.2.

12

### III. *Sufficiency of the Evidence*

Stump contends substantial evidence did not support the Sierra Club's decision to suspend him.  He discusses at length each of the Sierra Club's findings against him and the evidence contradicting those findings.  He asks this court by way of declaration, mandamus, or injunction to vacate the Sierra Club's findings against him as they are not supported by the evidence and to compel the Sierra Club to restore his ability to hold leadership positions.  We decline to do so.

As we have explained, "[o]ut of respect for a private association's autonomy and special competence, courts generally will not interfere with the internal affairs of such an organization or with the enforcement of its rules unless the determination of some civil or property right is involved.  [Citation.]  'It is true that courts will not interfere with the disciplining or expelling of members of such associations where the action is taken in good faith and in accordance with its adopted laws and rules.  But if the decision of the tribunal is contrary to its laws or rules, or it is not authorized by the by-laws of the association, a court may review the ruling of the board and direct the reinstatement of the member.'  [Citation.]  When a voluntary association disciplines one of its members, '. . . the only function which the courts may perform is to determine whether the association has acted within its powers in good faith, in accordance with its laws and the law of the land.' " (*Budwin v. American Psychological Assn*. (1994) 24 Cal.App.4th 875, 879 (*Budwin*).)

Stump is asking us to weigh in on the internal affairs of the Sierra Club.  However, he does not argue that some civil or property right is involved such that we should interfere with the Sierra Club's enforcement of its bylaws and rules.  (*Budwin*, *supra*, 24 Cal.App.4th at p. 879.)  Moreover, he has not shown that the Sierra Club acted in plain contravention of its bylaws and rules.  In these circumstances, we exercise judicial restraint and decline to substitute our judgment for that of a private organization on a matter that is best left to the organization.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to costs on appeal.

McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

14